Mark MORAN, Petitioner–Appellant,

v.

Kenneth SONDALLE, Respondent–Appellee.

Daniel L. Johnson, Petitioner–Appellant,

v.

Kenneth Sondalle, Respondent–Appellee.

Robert R. Paulk, Petitioner–Appellant,

v.

Kenneth Sondalle, Respondent–
Appellee.

Terry Paul, Petitioner–Appellant,

v.

Kenneth Sondalle, Respondent–
Appellee.

Michael Spiess, Petitioner–Appellant,

v.

Kenneth Sondalle, Respondent–
Appellee.

Nos. 00–1190, 00–1250, 00–1206,
00–1291, 00–1220.

United States Court of Appeals,
Seventh Circuit.

Submitted May 4, 2000

Decided June 22, 2000

Mark Moran, Fox Lake Correctional Institution, Fox Lake, WI, submitted the brief pro se.

Daniel J. Johnson, Fox Lake Correctional Institution, Fox Lake, WI, submitted the brief pro se.

Robert R. Paulk, Fox Lake Correctional Institution, Fox Lake, WI, submitted the brief pro se.

Terry Paul, Fox Lake Correctional Institution, Fox Lake, WI, submitted the brief pro se.

Michael Spiess, Fox Lake Correctional Institution, Fox Lake, WI, submitted the brief pro se.

James E. Doyle, Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, submitted the brief for Kenneth Sondalle.

Before POSNER, Chief Judge, and EASTERBROOK and DIANE P. WOOD, Circuit Judges.

PER CURIAM.

We have consolidated five cases in which prisoners required to litigate under 42 U.S.C. § 1983 instead sought writs of habeas corpus. The Prison Litigation Reform Act, which applies to prisoners' civil suits, imposes requirements different from those of the Antiterrorism and Effective Death Penalty Act, which governs collateral attacks on confinement, making it important to classify cases correctly. See, e.g., *Pischke v. Litscher*, 178 F.3d 497 (7th Cir.1999); *Valona v. United States*, 138 F.3d 693 (7th Cir.1998); *Moore v. Pemberton*, 110 F.3d 22 (7th Cir.1997); *Copus v. Edgerton*, 96 F.3d 1038 (7th Cir.1996). Prisoners may be tempted to choose one route rather than another to avoid limitations Congress adopted. For example, the filing fee for an action seeking a writ of habeas corpus is $5, while the fee to commence a case under § 1983 is $150, see 28 U.S.C. § 1914(a), and the fee in a § 1983 case eventually will be collected from the prisoner's trust account under 28 U.S.C. § 1915(b) even if the prisoner cannot pay in advance. Frivolous actions count as "strikes" under § 1915(g), and a prisoner who has accumulated three strikes must as a rule prepay the fees in all future civil actions, while collateral attacks are not subject to limitation because of prior frivolous suits.

Four of the petitions, filed by Mark Moran, Daniel Johnson, Robert Paulk, and Terry Paul, contend that Wisconsin violated multiple provisions of the Constitution by transferring inmates to privately run prisons in other states. The fifth, filed by Michael Spiess, alleges that Wisconsin failed to use constitutionally required procedures before denying an application for release on parole. All five prisoners claimed that relief is proper under 28 U.S.C. § 2241. In the first four cases the district court, citing *Pischke*, held that such claims must be pursued as civil suits under § 1983. In each case the district court dismissed the petition (without prejudice to refiling under § 1983), declined to

issue a certificate of appealability, see 28 U.S.C. § 2253(c)(1)(A), and permitted the appeal to proceed in forma pauperis. In each case, despite ruling that the action was frivolous, the district court declined to certify that an appeal would not be in good faith under 28 U.S.C. § 1915(a)(3). The district judges stated that the prisoners were "earnest" and thus proceeding in good faith. In the fifth case the district court did not reach the merits, ruling that Spiess had failed to exhaust his state remedies. See 28 U.S.C. § 2254(b)(1)(A). The court declined to issue a certificate of appealability and certified that the appeal is in bad faith, so that all appellate fees must be prepaid. Despite *Newlin v. Helman*, 123 F.3d 429, 437–38 (7th Cir.1997), which holds that a collateral attack on a prison administrator's decision is a "civil action" for purposes of the PLRA, in none of the five cases did the district court attempt to collect filing fees from the prisoner's trust account under 28 U.S.C. § 1915(b).

Moran, Johnson, Paulk, and Paul ask us to issue certificates of appealability so that they may proceed on appeal. Spiess wants both a certificate of appealability and an order permitting him to proceed in forma pauperis. Two opinions released after the decisions under review affect these requests.

■ *Lee v. Clinton*, 209 F.3d 1025 (7th Cir.2000), holds that an appeal in a frivolous suit cannot be "in good faith" under § 1915(a)(3), because "good faith" must be viewed objectively. Because the district judges believed all five suits to be frivolous, all five appeals should have been certified as not in good faith, and prepayment of all appellate fees should have been required.

■ Part II.B of *Walker v. O'Brien*, 216 F.3d 626 (7th Cir.2000), issued contemporaneously with this opinion, holds that state prisoners who desire to protest actions by prison administrators, and who are entitled to collateral review (an important qualification), must meet conditions laid down by § 2254. Part III of *Walker* holds that no petition for a writ of habeas corpus is a "civil action" for purposes of § 1915(b), overruling Part III of *Newlin*. The fee-collection mechanism of the PLRA therefore does not apply to any of these cases. (For the same reason, § 1915(g) would not preclude a court from excusing the prepayment of the filing fees in the district court and the court of appeals in a case properly filed as a collateral attack.) Finally, Part IV of *Walker* holds that state prisoners require certificates of appealability only when they contest their convictions or sentences; prisoners who contest prison discipline (for example, the deprivation of good-time credits) may appeal without them. Thus none of our five appellants requires a certificate of appealability.

■ This procedural victory gets them no further, however, because none of these five cases is a proper collateral attack. *Pischke* holds that state prisoners who want to challenge transfers to out-of-state prisons must use § 1983. Moran, Johnson, Paulk, and Paul contend that they have new arguments, but none of these undercuts *Pischke*. Prisoners who want to be confined in one state rather than another are not demanding immediate (or earlier) *release* and therefore must use § 1983; they are not entitled to seek collateral relief under either § 2241 or § 2254. Spiess, who wants to challenge the procedures used for parole-release decisions, does not even attempt to argue that he has new arguments that would avoid this circuit's cases requiring such arguments to be presented under § 1983. See, e.g., *Clark v. Thompson*, 960 F.2d 663 (7th Cir.1992); *Huggins v. Isenbarger*, 798 F.2d 203 (7th Cir.1986).

■ For most purposes, the line between the domain of collateral review and that of § 1983 is simple. State prisoners who want to challenge their convictions, their sentences, or administrative orders revoking good-time credits or equivalent sentence-shortening devices, must seek habeas corpus, because they contest the fact

or duration of custody. See, e.g., *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). State prisoners who want to raise a constitutional challenge to any other decision, such as transfer to a new prison, administrative segregation, exclusion from prison programs, or suspension of privileges, must instead employ § 1983 or another statute authorizing damages or injunctions—when the decision may be challenged at all, which under *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), will be uncommon. See also *Wallace v. Robinson*, 940 F.2d 243 (7th Cir.1991) (en banc); *Higgason v. Farley*, 83 F.3d 807 (7th Cir.1996). Legal rules, like physical surfaces, cause diffraction at the edges, see *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir.1991); *Thurman v. Gramley*, 97 F.3d 185, 187 (7th Cir.1996), but the exceptions (like the scattering of light) may be ignored for most practical purposes. Prisoners who follow the rule stated in this paragraph rarely will go wrong; those who ignore it rarely will go right. Our five appellants ignored this line of demarcation.

The district judges resisted the temptation to "convert" the prisoners' actions into § 1983 suits because, as we observed in *Pischke* and its predecessors, actions under the PLRA and the AEDPA have different procedural requirements and different potential consequences. All four suits concerning transfers were dismissed outright, and properly so. All four judgments are summarily affirmed. We recognize that two procedural assumptions behind this conclusion are incompatible with *Montez v. McKinna*, 208 F.3d 862 (10th Cir.2000), which held that § 2241 may be used to challenge transfers to out-of-state prisons, and that prisoners who employ § 2241 in such cases need certificates of appealability. But these aspects of *Montez* are incompatible not only with *Pischke* but also with Parts II.B and IV of *Walker*. Moran,

Johnson, Paulk, and Paul are beneficiaries of the difference between *Walker* and *Montez*, for they have obtained appellate decisions even though they could not establish, as § 2253(c)(2) requires, "a substantial showing of the denial of a constitutional right." See *Slack v. McDaniel*, —— U.S. ——, 120 S.Ct. 1595, 1603–04, 146 L.Ed.2d 542 (2000).

This does not end matters, however, because *Pischke* warned prisoners that any similar objection to transfer to privately run, out-of-state prisons would be frivolous. See also, e.g., *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Stanley v. Litscher*, 213 F.3d 340, 342–43 (7th Cir.2000). Filing a frivolous § 1983 action as a petition for a writ of habeas corpus avoids § 1915(b) and (g), but it does not make the action any the less frivolous; to the contrary, it is *more* frivolous, because it is abusive procedurally as well as substantively. Before filing their appeals, these prisoners not only knew about *Pischke* but also had been informed by the district judges that their efforts to avoid *Pischke* are unavailing. Prisoners who play games to avoid the PLRA should not expect courts to cooperate.

█ All four suits arising out of the transfers and, more importantly now, all four appeals, are frivolous. Moreover, because these appeals are not in good faith for purposes of § 1915(a)(3), we revoke the orders permitting the appellants to proceed in forma pauperis. The filing and docket fees for appeal must be paid in full, and failure to do so will be handled under the approach of *Support Systems International, Inc. v. Mack*, 45 F.3d 185 (7th Cir.1995), as Part II of *Newlin*, 123 F.3d at 436–37, describes. (This portion of *Newlin* is unaffected by either *Walker* or *Lee*). Because both the proceedings in the district court and the appeals are frivolous, each of these plaintiffs has accumulated two "strikes" for purposes of § 1915(g): *any* frivolous suit or appeal by a prisoner counts, even though only in a future "civil

**652**

action or appeal [of] a judgment in a civil action" must a prisoner who has "struck out" prepay the full filing fees.

As for Spiess, who launched a collateral attack on the procedures used to deny his application for release on parole: once again § 1983 should have been used. Spiess does not seek release from custody; he wants reconsideration of his application using different procedures. Claims of this kind that have reached the Supreme Court have uniformly been handled under § 1983. See, e.g., *Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); *Greenholtz v. Inmates of Nebraska Penal Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). *Clark* and *Huggins*, our own opinions on the subject, also say that challenges to procedures employed to consider applications for parole are civil actions under § 1983 and not collateral attacks under § 2241 and § 2254, unless the prisoner contends that application of his preferred procedures would have led to his immediate release. The district court therefore should not have dismissed the § 2241 action as premature, inviting Spiess to file another after exhausting state remedies; it should have dismissed the petition with prejudice on the ground that § 1983 provides the exclusive remedy. Of course, Spiess faces obstacles under § 1983 too. For one thing, exhaustion of administrative remedies now is required in prisoners' § 1983 suits. See 42 U.S.C. § 1997e(a); *Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir.1999). For another, the due process clause has nothing to say about parole-release decisions unless states have conferred entitlements sufficiently definite to count as "liberty" or "property." *Greenholtz*; *Jago v. Van Curen*, 454 U.S. 14, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981). Our examination of Wisconsin's parole-release system in *Felce v. Fiedler*, 974 F.2d 1484, 1491–92 (7th Cir.1992), led us to say that prisoners who have served two-thirds of their terms have such an entitlement; other prisoners may have no more than a hope or desire, which *Green-*

*holtz* holds is insufficient to create a liberty or property interest. Perhaps Wisconsin's system has changed since 1992; but if it has not, then any § 1983 suit Spiess may file would be frivolous.

The five applications for certificates of appealability are dismissed as unnecessary. The judgment of the district court in Spiess's case is vacated, and the matter is remanded with instructions to dismiss the collateral attack as improper, but without prejudice to a civil action under § 1983. (Spiess's application for leave to proceed in forma pauperis is denied, however, for he had no hope of success on the merits or even of obtaining a remand for decision on the merits. His appeal was not in good faith, and Spiess owes the entire fee under the procedures of *Newlin*.) The other four judgments are affirmed, two strikes are assessed against each appellant, and the appellate fees promptly must be paid in full.